[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for the dissolution of the parties' marriage, on the ground of irretrievable breakdown, by complaint returnable to this court June 16, 1995. She also sought custody and support of their minor children, alimony, and other relief as on file. The defendant husband admitted the allegations of the complaint and filed a counterclaim in which he sought a dissolution on the same grounds. He also sought custody and support of the minor children, alimony, and other relief as on file.
At trial, both parties testified and were represented by counsel. They submitted financial affidavits and written proposed orders. The plaintiff submitted a child support guidelines worksheet. Some documents were introduced into evidence.
The parties agreed on the record to joint legal custody of CT Page 1635 their minor children, primary residence with mother and certain rights of visitation with father. The court ordered the parties to participate in the Parenting Education Program. See General Statutes § 46b-69b. The parties waived oral argument and the filing of briefs, and the court continued the case until February 13, 1996, which date was extended to February 29, 1996, for the parties to file a stipulation as to the valuation of the plaintiff's mother's life estate (or the plaintiff's remainder interest) in the marital dwelling, and as to the filing of joint income tax returns for the 1995 year.
The parties agreed that the husband would pay to the wife the sum of $175 per week as his contribution to family maintenance, until further order of the court, which agreement the court accepted.
From the evidence, I find as follows.
The parties were married October 31, 1982, in Pawcatuck, Connecticut. The wife's birth name was Lassell. The wife has resided continuously in this state for more than one year before the date of the complaint. Two minor children were born issue of the marriage, whose names and dates of birth are: Jack Joseph Samataro, Jr., January 26, 1983; and, Chelsea Naomi Samataro, February 21, 1992. No other minor children were born to the wife since the date of the marriage. All statutory stays have expired, neither party or the children are recipients of public assistance, and the court has jurisdiction.
The wife is 29 years of age, a high school graduate with one year of college, and in good health. She has worked for the past eight years in a carpet business owned by her family. She is president of the company and manages the business; her responsibilities include sales and bookkeeping. She disclaims any ownership interest in it. She earns $450 per week gross, $355 per week net. She has health insurance benefits associated with her job. She has worked throughout the marriage, except for a break after the birth of her second child.
The husband is 30 years of age, a high school graduate, with electrician training, and in good health. He is a licensed master electrician and is employed in a business owned by his father and a partner. Although the husband is the vice president of the company, he has no ownership interest in it. He has worked as an electrician throughout his career. He presently earns $600 per CT Page 1636 week gross, $450[1] per week net. He has health insurance which covers the children and is fully paid by the employer. As an additional perquisite of his employment, he is allowed unrestricted use of a company vehicle; the company! pays for gasoline, insurance, taxes, etc.
The parties married very young. Their marriage of over 13 years began to deteriorate some years ago. The couple argued and failed to communicate. They slept separately and their sharing of intimacy and sexual relations became infrequent. They separated in April 1995. The husband began a relationship with another woman. The couple halfheartedly attempted reconciliations twice. Although the marriage was not doing well, the husband's extramarital relationship gave it the kiss of death. The marriage has now irretrievably broken down, and a greater share of the responsibility for its destruction must lie with him.
The parties have accumulated modest assets during the marriage. The major asset, a remainder interest in the jointly owned family home at 314 Liberty Street, Pawcatuck, Connecticut, was purchased by them from the wife's mother in 1990 for $125,000 by purchase money mortgage. The home includes a `mother-in-law' apartment, which the mother resides in; she has retained a life estate in the apartment,[2] and presumably the land. The deed reserving the life estate also contained the following provision: "The grantees shall make no mortgage or conveyance of these premises without the written consent of the grantor". The parties are responsible for the real estate taxes on the dwelling and land and the utility bill for the apartment, as there is a single meter. The wife's mother is 63 and has a present life expectancy of 20 years.
The value of the dwelling is $175,000, less the mortgage balance of $109,000, which leaves an equity of $66,000 for the property, without deduction for the life estate. The value of the life estate[3] if it only applied to the apartment, is difficult to approximate. If it applied to the property as a whole, the value of the life estate would be $93,000,[4] leaving $82,000 for the remainder interest which is less than the mortgage balance outstanding. If the apartment approximated 35 percent of the total dwelling area, then the value of the life estate derived by proration would be $32,550. This leaves $142,450 for the remainder interest, and an equity of $33,450. The parties submitted an appraisal and stipulation posttrial relating to the valuation of the life use. The court does not CT Page 1637 find the appraiser's opinion persuasive.
Complicating the valuation process further is the restriction on alienation above referred to, which would render the property unmarketable without the consent of the plaintiff's mother. Moreover, the deed reserving the life estate requires the holder of the remainder interest to pay all of the real estate taxes attributable to the property as a whole, together with the utility bills for the apartment. Considering all of these factors, and the totality of circumstances, it would appear that the present equity in the remainder interest in the premises may be incapable of valuation, as being unmarketable. Hence, it only has value to the parties.
The other assets reported by the parties on their financial affidavits are as follows: the wife, a 1993 Honda automobile valued at $11,000 with a loan of $2,500, leaving equity of $8,500; bank accounts of $300; and an IRA of $300. The husband reports the Honda at the same value; and two bank accounts with no balances. Neither party reported the values of their household furniture and furnishings on their financial affidavits; however, they testified to values of "between $6,000-$10,000".
Against these assets, the husband discloses no ', liabilities on his financial affidavit, although he testified he has a credit card bill of $150; the wife discloses a $2,490 debt to her parents.
Against these assets, the husband discloses no liabilities on his financial affidavit, although he testified he has a credit card bill of $150; the wife discloses a $2,490 debt to her parents.
I find that the tangible personal property has already been substantially and equitably divided by the parties, and on the the state of the evidence, it is impossible to determine the values of the items of personal property, nor would it serve any useful purpose to do so.
I also find from the evidence that the husband's monetary contributions to the marital estate, at least for 1993 and 1994, apart from the home, exceeded those of the wife, since his earnings were greater than hers. The equity in the house, in excess of the paydown, approximately $16,000, of the mother's mortgage, having been derived from the wife's mother, must be CT Page 1638 counted as part of the wife's contribution to the acquisition and appreciation in value of the marital assets. There is insufficient evidence to make a determination about the parties' respective nonmonetary contributions.
The following additional findings are made. The parties were the beneficiaries of numerous gifts from the wife's mother, including appliances and furniture, which gifts are likely to continue to the wife. The husband has had greater earnings and earning capacity than the wife. Thus, these factors indicate they have approximately equal opportunity to acquire capital assets and income in the future. This is especially so when the existence of the vested remainder interest in the family dwelling is factored into the equation.
The wife pays below market fees for her full-time employment-related day care to a day care provider in which the husband's father has an ownership interest. It is uncertain whether she will have the benefit of this low rate after the dissolution. I find that these costs are reasonable, that day care is necessary at this time for her to maintain employment and that the payment of the day care costs leaves insufficient funds for the other needs of the children.
The presumptive child support obligation recommended by the application of the Child and Support and Arrearage Guidelines (guidelines) is $165 per week for the parties' two minor children. The husband argues for a downward departure from the guidelines and assets that two deviation criteria are applicable. The first, a division of assets, the second, the shared custodial arrangements the parties have agreed upon.
I am not persuaded by either claim. With the exception of the family car, the tangible personal property has been equitably divided. The husband has a vehicle furnished to him by his employer; the wife obviously has need of a vehicle to transport herself and the children. The value of the remainder interest in the home, as previously stated, is problematical; I cannot find that the division of assets as proposed by the defendant will not result in a lesser economic benefit to the children. See Guidelines, § 46b-215a-3 (b)(5).
The shared custody arrangement provides that the children are with father every other weekend, from Friday evening to Sunday evening, and every Tuesday evening to Wednesday morning (with CT Page 1639 Chelsea, only). This arrangement, when followed, allows one child to spend about 18 percent of her time with the father; the other child, 14 percent, exclusive of holidays, summer and school vacations. I cannot find, under the circumstances of this case, that this time is substantial, as the Guidelines Commission contemplated in the 1991 Guidelines, when the Commission stated:
"(8) Custody Arrangements: . . . In the case of shared custody, the Commission finds that where the dependent child spends substantial time in the care of each parent, this factor should be considered a reason for deviation from the guidelines." The 1994 Commission debated whether to define `substantial 'by the use of 35 percent or 25 percent as the threshold percentage of shared custody, but decided to leave that issue to the court ' s discretion. See Mulholland v. Mulholland, Superior Court, Judicial District of Hartford at Hartford, Docket No. 362120 (Barall, J., June 13, 1994).
The defendant has not met his burden of showing that the time he spends with the children, under the circumstances of this case, is sufficiently `substantial' to be able to invoke the application of the shared custody deviation criterion. Moreover, his gross and net income computations do not include the value of his in-kind compensation in the form of the company vehicle provided him. This compensation has been totally ignored, and should not have been. See Guidelines, § 46b-215a-1 (11) (xii). Considering the totality of the circumstances, I see no reason to depart from the Guidelines.
I have considered all of the factors in General Statutes §§ 46b-81, 46b-82 and 46b-84 in the light of the evidence in the making of the financial awards hereinafter set forth. I have also considered the taxable complications and consequences of such awards.
Accordingly, judgment may enter dissolving the parties ' marriage on the ground of irretrievable breakdown.
The following orders are also entered.
(1) Joint legal custody of the minor children is awarded to the parents, they are to reside with mother; rights of access to father every other weekend from Friday, 5 p. m. to Sunday, 5 p. m.; every Tuesday, 5 p. m. to Wednesday, 7 a.m. (Chelsea only) and such other holidays, school and summer vacations as they may CT Page 1640 agree upon. The Parenting Education Program is ordered. See General Statutes § 46b-69b.
(2) The husband shall pay to the wife as child support the sum of $165 per week to be secured by contingent wage garnishment. If the garnishment becomes effective, payments shall be made directly to the wife. In addition, he shall pay to the wife one half of the day care costs associated with wife's employment, until Chelsea begins first grade.
(3) Commencing with the 1996 tax year, the husband shall be entitled to claim one child as a dependency exemption for income tax purposes; the wife, the other. When the oldest child may no longer be claimed, the parties shall alternate the exemption in succeeding years.
(4) The husband shall maintain and pay for health insurance available through his employment for the benefit of the minor children. The parties shall share the unreimbursed uncovered health expenses incurred for the children 50/50. An order pursuant to General Statutes § 46b-84d shall enter.
(5) All right, title and interest in and to the marital dwelling at 314 Liberty Street, Pawcatuck, Connecticut, is assigned to and vested in the wife, subject to the mortgage, which she shall pay and save the husband harmless.
(6) The wife shall take, have and own the following: all tangible personal property now in her possession; her Honda automobile, subject to the loan, which she shall pay and save the husband harmless; her bank accounts and IRA account.
(7) The husband shall take, have and own all of the tangible personal property in his possession, and his bank accounts.
(8) The wife shall pay the liabilities shown on his financial affidavit; the husband shall pay the credit card debt he disclosed.
(9) Each party shall pay his or her own attorney's fees.
(10) The wife shall maintain her employment-related life insurance policy with the children as equal irrevocable beneficiaries until the oldest reaches age 18; then the youngest shall be the sole beneficiary until she reaches 18. She shall CT Page 1641 execute and deliver a written authorization to the husband so that he may determine the status of said policy. The husband shall do likewise if life insurance is available to him from his employment.
(11) The husband shall pay to the wife the sum of $1 per year as alimony, to terminate upon the death of either party, the wife's remarriage or pursuant to the provisions of General Statutes § 46b-86 (b) or September 1, 1998, whichever first occurs.
(12) The parties' posttrial stipulation as to the filing of joint income tax returns for 1995 is approved, and they are ordered to do so and share the refunds, liabilities and costs thereof equally.
(13) The wife's birth name of Lassell is restored to her.
Teller, J.